IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 8:07CR339 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | SENTENCING MEMORANDUM |
| | ) | |
| LAWRENCE RAY COOK, | ) | |
| | ) | |
| Defendant. | ) | |

This Sentencing Memorandum supplements findings made on the record at defendant's sentencing hearing on February 12, 2009.

**I. BACKGROUND**

Defendant was charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and is subject to sentencing under 18 U.S.C. § 924(e) (the Armed Career Criminal Act or "ACCA"). Under the ACCA, the statutory range of imprisonment for a violation of 18 U.S.C. § 922(g) by a person with three previous convictions for violent felonies or serious drug offenses is fifteen years to life. See Filing No. 34, Information of Prior Convictions.[1]

The defendant entered a plea of not guilty and the matter was tried to a jury. At the close of the government's case, the court granted the defendant's oral motion for a judgment of acquittal on the charge of possession of a weapon, but the charge of

---

[1]The government relied on the following violent felony convictions: a conviction in 1989 for terroristic threats for which Cook was sentenced to 18 to 36 months, a 1989 conviction for assault on a confined person, for which he received a sentence of 20 months to five years, and a 2005 conviction for the offense of Assault on an Officer, for which he was sentenced to 20 to 24 months.  Filing No. 34, Information.  Certified copies of those convictions were admitted into evidence at the sentencing hearing on February 11, 2009.  Filing No. 94, Exhibit List, Exs. 4, 5, and 6.

possession of ammunition was submitted to the jury. Filing No. 92, minute entry; Filing No. 88, Jury Instructions. The jury returned a verdict of guilty. Filing No. 82, Verdict.

The evidence adduced at trial shows that on September 17, 2007, Omaha Police Department ("OPD") officers responded to a report of a hit and run accident. Witnesses reported that a silver Chevy had collided with a parked vehicle and the driver of the Chevy had fled on foot. The officers attempted to locate the driver and were flagged down at the intersection of 42nd and Sorensen Parkway by a male, later identified as the defendant, who was breathing heavily and sweating. He told the officers that his silver Chevy had collided with another vehicle and he "fell out" of his vehicle and left the area. Cook volunteered that he had a revolver in his pants pocket and OPD Officers located a loaded .38 caliber American Double Action Revolver in his front left pants pocket with 2 unfired .38 caliber rounds and one .38 caliber shell casing. Cook presented the affirmative defense that he obtained the ammunition innocently, held it with no illicit purpose, and took measures to rid himself of it as promptly as possible.

The court directed the United States Office of Probation (hereinafter, "the Probation Office" or "Probation") to prepare a Presentence Investigation Report ("PSR") that calculated the defendant's sentence under the United States Sentencing Guidelines ("the Guidelines"). Filing No. 81, Order on Sentencing Schedule. In the PSR, the Probation Office identified U.S.S.G. § 2K2.1(a)(2) as the applicable Guidelines base offense level provision. Filing No. 98, PSR (sealed) at 5, 23. That section provides a base offense level of 24 if the defendant committed any part of the instant offense subsequent to sustaining two felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 2K2.1(a)(1). It also added a two-level increase under U.S.S.G. § 3C1.1 for

obstruction of justice, which Probation found applicable because the "[t]he defendant testified at trial that he did not commit the instant offense, and the jury determined he did commit the offense." *Id.* at 4; see U.S.S.G. § 3C1.1, comment. (n.4(b)) (stating the enhancement is appropriate when a defendant "commits, suborns or attempts to suborn perjury."). Probation also found the defendant was subject to an enhanced sentence as an armed career criminal under 18 U.S.C. § 924(e). *See* U.S.S.G. § 4B1.4(b)(3)(B). Under that section of the Guidelines, the base offense level is the greater of either the base offense Level established under the guideline for the offense of conviction or base offense level 33.

Under the Guidelines, a career offender is always assigned to the highest category VI. U.S.S.G. § 4B1.1(b). Probation determined that the calculation of defendant's criminal history category also resulted in criminal history category VI, based on the assessment of 15 criminal history points for convictions for assault, assault on an officer, assault by a confined person, first-degree theft, robbery, forgery, and terroristic threats. At criminal history category VI and base offense level 33, the defendant's sentencing range under the Guidelines is 235 to 293 months. *Id.* at 15.

The PSR relates that Cook is fifty-three years old. *See id.* at 2. He has an eleventh-grade education. *Id.* at 14. He reports that he has hepatitis and a skin disease and that he was diagnosed with schizophrenia in 2005. *Id.* He states he is not taking any medication at this time and feels the condition is stabilized and does not require ongoing treatment. *Id.* He reports that he has not used drugs at all in the last fifteen years. *Id.* Cook's criminal record dates back to 1972, when he was 14. *Id.* at 6.

Cook objected to the assessment of a two-level enhancement for obstruction of justice and to the conclusion that he is an armed career criminal. Filing No. 91, Objection to PSR. The government adopted the findings of the PSR. Filing No. 89, government's statement.

## II. DISCUSSION

### A. Law

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. *Booker,* 543 U.S. at 226-27. In the *Booker* remedial opinion, the Supreme Court determined that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory. *Id.* at 245. Consequently, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States,* 552 U.S. —, —, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* 552 U.S. —, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. 270, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obliged to "take account of"

that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a) of the Sentencing Reform Act).

District courts must therefore "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246); *Gall,* 552 U.S. at —, 128 S. Ct. at 596 (stating "[t]he Guidelines are not the only consideration, the district judge should consider all of the § 3553(a) factors"). These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring); *see also* Spears v. United States, — U.S. —, 129 S. Ct. 840, 2009 WL 129044 (Jan. 21, 2009) (recognizing the district courts' authority to vary from Guidelines based on policy disagreement).

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570 *(quoting* 18 U.S.C. § 3553(a)). The statute further provides that "in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct.'" *Id. (quoting* 18 U.S.C. § 3553(a)).

Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 596-97. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.*, 552 U.S. at —, 128 S. Ct. at 596. If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.* The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.

The Guidelines were developed to advance the sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparency of punishment. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing at 11-12 (Nov. 2004) (hereinafter, "Fifteen-Year Assessment"). The Sentencing Commission ("the Commission") was originally charged by Congress with developing guidelines to meet the "purposes of punishment" set out in § 3553(a)(2), and to achieve proportionality, crime control through incapacitation and deterrence, and rehabilitation. *Id.* at 12-13. Toward that end, the Commission developed

and used data on past practices and recidivism in formulating the Guidelines. *See id.* at 14 (noting that the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567 (regarding drug-trafficking guidelines). Based on sentencing statistics, the Commission established the base offense levels for each crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases, the Guidelines represent a reasonable estimation of a fair sentencing range. *See Kimbrough*, 552 U.S. at —, 128 S. Ct. at 564 (noting that in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives). In cases involving application of Guidelines that do not exemplify the Commission's exercise of its characteristic institutional role—basing its determinations on "'empirical data and national experience, guided by a professional staff with appropriate expertise,'"—it is not an abuse of discretion for a district court to conclude when sentencing a particular defendant that application of the guideline will yield a sentence "greater than necessary" to achieve the purposes set out in § 3553(a). *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 574-75 (*quoting United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

For policy reasons, and because statutory mandatory minima dictated many terms of the Guidelines, the Commission departed from past practices in setting offense levels for recidivists and for certain crimes. Fifteen-Year Assessment at 15, 72-73; *see Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567 (involving drug-trafficking crimes). The Guidelines that establish the base offense levels for recidivists for felon in possession charges are among those that were not based on empirical data and national experience. *See* Fifteen-Year

Assessment at 23 n.77.  Consequently, the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence.  *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574.

At the inception of the Federal Sentencing Guidelines, the Commission originally based the guidelines for these firearm offenses on its study of past practices.  *See* United States Sentencing Commission, Guidelines Manual, § 2K2.1 (Nov. 1, 1987).  A felon in possession charge carried a base offense level of 9.  *See id.*, § 2A1.3 (Nov. 1, 1987).  Beginning in 1984, with expansions in 1986 and 1988, Congress enacted a series of mandatory minimum penalties that targeted firearm, drug, and sex offenses, and repeat offenders.  Fifteen-Year Assessment at 3.  Thereafter, the Commission undertook several major revisions of firearms guidelines, which resulted in significant severity increases over historic levels.  *See, e.g.,* U.S.S.G. app. C (Supp.), amends. 355 (1990), 459 (1992), 646 (2002), and 674 (2004); Fifteen-Year Assessment, executive summary at ix (noting that prison terms were about double what they had been in the pre-Guidelines era, and average time served has doubled between 1988 and 1995).  Indeed, "[t]hese revisions have dramatically increased offense levels, particularly for offenders with prior convictions and for those who used more dangerous types of weapons."  *Id.* (acknowledging that the changes in sentences for illegal firearm transactions and possession represent one of the most substantial policy changes initiated largely by the Commission).

In the Sentencing Reform Act, Congress expressly directed the Sentencing Commission to increase sentences for recidivist offenders.  *See* 28 U.S.C. § 924(e); 28 U.S.C. § 994(i) (directing the Commission to assure that the Guidelines specified a substantial term of imprisonment for specified categories of offenders including recidivists);

28 U.S.C. § 994(h) (requiring the Commission to provide a sentence "at or near the maximum term authorized" for certain categories of violent and drug trafficking offenders with two or more prior offenses). The career offender guideline, § 4B1.4, implements that congressional directive. U.S.S.G. §4B1.4; United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (August 1991), accessed at www.ussc.gov/reports.htm ("Mand. Min. Rep't") at 17 n.58; Fifteen-Year Assessment at 133. It places each offender with three violent or drug trafficking convictions in the highest criminal history category VI, and sets the offense level at the guideline range associated with the statutory maximum penalty for the offense. U.S.S.G. § 4B1.4.

The Sentencing Guidelines provide that if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing" of an offense, the court may depart from the statutory guidelines and increase the defendant's sentence by two levels. U.S.S.G. § 3C1.1. Committing perjury at trial constitutes an obstruction of justice within the meaning of § 3C1.1. *United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2004). Because a finding of obstruction results in an increase in a defendant's sentence, the government bears the burden of proving the facts necessary to support the finding by a preponderance of the evidence. *Id.* "The sentencing court cannot give the upward departure 'simply because a defendant testifies on his own behalf and the jury disbelieves him.'" *Id.* (*quoting United States v. Washington*, 318 F.3d 845, 861 (8th Cir. 2003). To do so would chill a defendant's constitutional right to testify on his own behalf. *Flores*, 362 F.3d at 1037. Once a defendant

objects to an obstruction enhancement, the sentencing court must itself conduct an independent evaluation and determine whether the defendant committed perjury. *Id.*

### B. Analysis

#### 1. Initial Guidelines Calculation

The court finds that defendant's objection to the two-level increase for obstruction of justice should be sustained. The court accepts the facts set forth in the PSR in all other respects. The court finds Cook's objection to armed career criminal status should be overruled. Under U.S.S.G. § 4B1.4, the base offense level is the higher of the base offense level calculated under 2K2.1 (in Cook's case, 24) or level 33. The court finds Cook's base offense level is 33 and his criminal history category is VI. Accordingly, the defendant's sentencing range under the advisory Guidelines is 235 to 293 months.

#### 2. Section 3553 factors

The defendant moves for an outside-guidelines sentence. He urges the court to sentence him to the statutory minimum of fifteen years under 18 U.S.C. § 924(e). In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the court finds that a sentence of 204 months (seventeen years) is sufficient, but not greater than necessary to accomplish the goals of sentencing. The court will accordingly grant the defendant's motion for a sentence outside the Guidelines.

With respect to the nature of the offense, the court notes that the possession of a weapon or ammunition by a person with a criminal history of violent felonies is a serious offense. The history and characteristics of the defendant are troubling. His criminal history includes serious crimes such as bank robbery, terroristic threats, forgery and theft, as well as numerous assaults. He was assessed 15 criminal history points and his record includes

many other law enforcement contacts that did not result in points for offenses such as simple assault, second-degree forgery and robbery. The defendant began to engage in criminal and antisocial behavior at a young age and has been unable to stay out of trouble for any significant amount of time since he was 15 years old. He has been sentenced to prison terms of ten years and fifteen years in the past. He has already been convicted once in state court of being a felon in possession of a firearm. He had only been out of prison for a short time when he committed this offense. He has not accepted responsibility for his actions. In light of his history and characteristics, the court finds that it is not appropriate to sentence the defendant to the statutory minimum.

Nevertheless, the guideline range of 235 months (roughly 19 and a half years) is longer than necessary to achieve the goals of sentencing. In formulating this sentence, the court has considered the sentencing range established by the Guidelines, but, because the felon-in-possession and career-offender Guidelines were promulgated pursuant to Congressional directive rather than by application of the Sentencing Commission's unique area of expertise, the court affords them less deference than it would to empirically-grounded Guidelines. The court must impose a sentence of at least the mandatory minimum of fifteen years, and finds that circumstances warrant the imposition of an additional two years of incarceration.

This sentence will satisfy the purposes of sentencing. The court finds that a significant period of incarceration is necessary to achieve the goals of sentencing and to establish some level of proportionality with other armed career offenders in order to avoid the perception of unwarranted disparity. A sentence of seventeen years is adequate to reflect the seriousness of the offense, promote respect for the law and provide just

punishment. This is a significant sentence and is in proportion to the longest sentence Cook previously served. A sentence of this length will enhance the public's confidence in the criminal justice system and will deter other felons from similarly possessing firearms and ammunition. The value of any additional prison time as a deterrent would be marginal. The need to protect society from further crimes of the defendant is satisfied by the length of the sentence and is also accounted for in the court's imposition of supervised release.

A Judgment and Commitment and a Statement of Reasons in conformity with this sentencing memorandum will issue this date.

DATED this 30th day of March, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge